W. H. PILANT *v.* WILLARD DAVIS ET AL.

Attorney and Client—Relation—Dealings—Constructive Fraud—Burden of Proof—Petition Need Not Allege Fraud.

    1. The law not only watches over the transactions between attorney and client, but it often interposes to declare such transactions void. On the other hand, dealings between them are not necessarily void, but the burden of establishing perfect fairness, adequacy and equity is thrown upon the attorney and it is not necessary for the client to allege in his petition that the transaction was fraudulent.

Innocent Purchaser.

    2. Upon investigation Tuter would have found that the land had been sold by a commissioner of the court, and although W. H. Pilant had purchased at the sale, and received a certificate of his purchasing, still he would have also learned that said certificate and the benefit of the purchase had been transferred to his vendor, by one legally authorized to

make the transfer, as adjudged by the court, that the legal title had been regularly conveyed and deed recorded by judicial sanction. Having ascertained the facts he was not required to go farther.

APPEAL FROM GARRARD CIRCUIT COURT.

November 25, 1867.

OPINION OF THE COURT BY JUDGE PETERS:

At a judicial sale, made on the 10th of November, 1863, under a judgment of the Garrard Circuit Court, appellant purchased two adjoining tracts of land in said county, sold as the property of the heirs of Groomes Taylor, the one containing 199 A., 2 R., 26 poles, at the price of $30 and 12-100 per acre; the other containing 24 A. and 13 poles, at $65 per acre; and the master who made the sale gave him a certificate of his purchase. On that certificate there is an indorsement in the following words: "For value received, I have this day assigned and transferred to Willard Davis the benefit of the within purchase, Aug. 22d, 1864. (Signed) William Pilant. By James Pilant, agent and attorney in fact."

On the day said indorsement bears date the following orders, made in the Garrard Circuit Court, in the case of R. Kanatzer and others against Lucinda B. Taylor and others, the same case in which the judgment for the sale of said lands was made.

It appearing that W. H. Pilant, by his agent and attorney in fact, has transferred the benefit to his purchase of land reported by commissioner to Willard Davis, as evidenced by certificate filed, and indorsement thereon, and acknowledgment made in open court by James Pilant, the agent and attorney in fact of Wm. H. Pilant, of said sale and transfer, and it being admitted that said Davis has paid to commissioners the purchase money of the land, after crediting the mortgage, which is paid by Davis to W. H. Pilant's agent and attorney in fact, the commissioner, G. W. Dunlap, is directed to make conveyance of the land aforesaid to said Davis, who thereupon acknowledged said deed in open court, which was examined, approved, and indorsed by the court, and ordered to be certified to the clerk of the Garrard County Court for record. Said commissioner is allowed $1.50 for maaking said deed, to be taxed in the costs, and the residue of the cause is continued. The deed of the commissioner to Davis corresponds in

date with said order, and recites that by a judgment of the Garrard Circuit Court, rendered at its August term, 1863, in the case of R. Kanatzer, etc., against Lucinda B. Taylor, etc., the undersigned was appointed a commissioner, among other things, to sell the landed estate of Groomes Taylor, deceased; that on the 10th of November, 1863, he offered said tracts of land for sale, and W. H. Pilant being the highest and best bidder, became the purchaser of 199 acres, 2 roods, 26 poles, at $30.42 per acre, and 24 acres and 13 poles, at $65 per acre, and executed his two several notes, payable in twelve months, and received the certificate of said commissioner of his said purchases; that said W. H. Pilant, by his agent and attorney in fact, James Pilant, on the 22d day of August, 1864, assigned the benefit of his purchase to Willard Davis, and in open court, by his agent aforesaid acknowledged said sale and transfer, and filed the same as part of *"this proceeding,"* and that said Davis has paid the purchase notes of said Wm. H. Pilant (after crediting the same with the lien by mortgage of the said Wm. H. Pilant on the land so sold), and satisfied and paid to James Pilant, agent and attorney in fact of said Wm. H. Pilant, his lien aforesaid, and referring to the order of court heretofore quoted, in consideration of the premises, conveyed both tracts of land to said Willard Davis.

On the 24th of February, 1865, Davis conveyed to N. H. Tuter the larger tract conveyed to him by the commissioner as aforesaid, in consideration of $7,960, payable in installments. Under the commissioner's deed to him, Davis took possession of both tracts, and delivered possession to Tuter of the tract conveyed to him.

This equitable action was brought by Wm. H. Pilant against Davis, Tuter, and James Pilant, to set aside the conveyance of the commissioner to Davis, and of Davis to Tuter, and to have both tracts conveyed, and the possession surrendered to him, upon the alleged grounds that Davis, who *had assumed* to act as the attorney of "the plaintiff in the matter, *improperly* procured the defendant, James Pilant," to transfer and assign to said Davis his said certificate as his agent and attorney, when he was not his agent, or attorney, and never was, and had not even a colorable authority to assign or transfer said certificate, or to sell said land. That said defendants, Davis and James Pilant, appeared in court, and by *"wrongfully and untruthfully"* representing to the court that the said plaintiff was dead, leaving issue, and that said James

was his father and heir, and presenting said certificate of purchase, with the indorsement, procured said order and deed to be made, and that said James Pilant, to whom Davis pretended to have paid the mortgage debt, was then, and had been for years before, insolvent. He furthermore alleges that the facts stated in the petition were known to Tuter at the time he contracted for the purchase of said land, and before he paid on the note first to mature $1,521, which he avers to be all that he paid.

The sale of the lands by the commissioner, the purchase by appellant, the execution of the certificate of purchase by the commissioner, are all admitted by Davis, and it is virtually admitted that James Pilant, who made the assignment of said certificate, had no authority or power to act for appellant, as his agent, or attorney in fact. But the grounds relied on by Davis to defeat the action are mainly that he believed James Pilant had the authority from his son to make the transfer; that there was some rumor in the county that appellant was dead; that he acted in the matter in good faith, and that appellant fails to charge in direct terms that the transaction was fraudulent by which he procured the deed to be made to him, and finally, and principally, upon the order of court directing the deed to be made to Davis before referred, and the deed of the commissioner properly authenticated, stamped, etc. The Circuit Judge set aside the transfer to Davis, and ordered him to surrender possession of the 24 acres and 13 poles of land to W. H. Pilant, upon being paid the amount which he paid for the land over and above the amount of W. H. Pilant's mortgage debt, with interest, and that he should be charged with rents and allowed nothing for improvements; adjudged Tuter an innocent purchaser, and confirmed the sale to him; but adjudged that Pilant was entitled to the price Tuter agreed to pay Davis for the land, and that he should pay the amount unpaid to him, and that the note given to Jas. Pilant by Davis be surrendered; and Davis and W. H. Pilant both appealed.

If it be admitted that James Pilant had authority from appellant to transfer the certificate of sale, or suppose appellant had done it himself, and it had been alleged, or it otherwise properly appeared in the record that Davis was his attorney in the case, and the connection still exists at the time of the alleged transfer, what would have been the result, even in that case, of a suit to set aside the sale and transfer? Justice Story says, sec. 310, vol. 1,

Story's Equity Juris: In the next place, as to the relation of client and attorney, or solicitor, it is obvious that this relation must give rise to great confidence between the parties, and to very strong influences over the actions, and rights, and interests of the client. The situation of an attorney, or solicitor, puts it in his power to avail himself, not only of the necessities of his client, but of his good nature, liberality, and credulity, to obtain undue advantages, bargains and gratuities. Hence the law, with a wise providence, not only watches over all the transactions of parties in this predicament, but it often interposes to declare transactions void, which between other persons would be held unobjectionable. It does not so much consider the bearing or hardship of its doctrine upon particular cases, as it does the importance of preventing a general public mischief, which may be brought about by means, secret and inaccessible to judicial scrutiny, from the dangerous influences arising from the confidential relation of the parties. By establishing the principle that, while the relation of client and attorney subsists in its full vigor, the latter shall derive no benefit to himself from the contracts, or bounty, or other negotiations, of the former, it supersedes the necessity of any inquiry into the particular means, extent and exertion of influence in a given case, a task often difficult and ill supported by evidence, which can be drawn from any satisfactory sources.

Sec. 311. On the other hand, it is not necessary to establish that there has been fraud or imposition upon the client; and on the other hand, it is not necessarily void throughout, *ipso facto*. But the burden of establishing its perfect fairness, adequacy, and equity is thrown upon the attorney, upon the general rule that he who bargains in a matter of advantage with a person placing a confidence in him, is bound to show that a reasonable use has been made of that confidence, a rule applying equally to all persons standing in confidential relations with each other. If no such proof is established, courts of equity treat the case as one of constructive fraud, etc. And in the concluding sentence of sec. 312, 2 B, it is said: "Sales made and annuities granted to attorneys, under similar circumstances, will, upon the same principles of public policy, be set aside at least, unless they are established to have been transacted *uberrama fide*."

It is true that appellee Davis denies that he *"assumed"* to act as the attorney of appellant; but we understand from that that

he repels the charge of *assuming* that character, and to assert he was the regularly employed attorney of appellant. He would not have denied that he was the attorney of appellant in the case if it had been directly and positively alleged in the petition, but if he had, it would have been shown by the following facts the day before he executed the deed to appellee, Tuter, for the land conveyed to him, he (Davis) executed a receipt to G. W. Dunlap, the commissioner in the said suit of Kanatzer, etc., v. Lucinda Taylor, etc., for $185.93, amount due appellant, and for over two hundred dollars, the amount reported to be due and adjudged to James Pilant, the same receipt embracing both sums, which he signed as the attorney for both of them. On the 16th of February, 1884, he presented the claims of appellant against the estate of Groomes Taylor, proved them to be just, and swore in the affidavit that Pilant was absent from the State, and that he was his attorney. He was present at the sale of the land on the 11th of November, 1863, representing himself there as the attorney of appellant, bid for the land in his name, and purchased the same for him, as Borton and others who were at the sale prove, and on the last named day signed the bonds for the purchase money as the attorney of Wm. H. Pilant, and signed them as the surety. The affidavit, receipt, and notes are filed as evidence in the case, and stand uncontroverted, covering a period of two years, commencing before and terminating six months after the alleged transfer of the commissioner's certificate of sale to him by James Pilant, and during all that time he never failed to declare his employment by appellant when necessary, and to manifest it by acts, until the certificate of the commissioner of the sale of the land was produced in court, with the transfer indorsed, and signed by James Pilant, and his motion to have the sale confirmed, and the conveyance made to himself.

But again the facts stated in appellee's affidavit, all of which were admitted, are confirmatory, if confirmation were needed, of the existence of the connection of attorney and client between these parties at the time and after the transfer of the certificate of sale to him, in that he states that one Lawless will prove that he heard appellant say that he had authorized his father, said James Pilant, to employ him, said Davis, as his attorney at law to foreclose the mortgage on the land in contest, and collect the mortgage debt. This authority to his father, according to appel-

lee's own statement, was limited to one single act, to employ Davis as his attorney at law for a designated purpose; when that was done his authority ceased; he was not empowered even to receive the money from Davis.

The residue of the affidavit relates to the then reputed death of appellant, and it is not improbable that that rumor was the source of these troubles; but be that as it may, the evidence puts it beyond all controversy that the relation of attorney and client subsisted between the parties, when the transfer aforesaid was made, and as appellee Davis has failed to show that the transaction was perfectly fair and equitable, and the price paid or promised adequate, it cannot stand.

It was not necessary that it should be alleged in the petition that the transaction was fraudulent; when the facts, as in this case, are established, courts of equity treat them as amounting to constructive fraud.

Nor can the transfer to Davis be sustained on the ground that James Pilant represented himself as the agent or attorney of his son; he knew that the son lived in Louisiana, had not been in Kentucky during the time the suit was progressing, and if his father had any agency further than to engage his services, it would have been most probably evidenced by a letter; no such letter is shown, and the existence of any such agency is repelled by the fact that Davis swore to the claim of young Pilant, bought the land, and executed notes for it in the presence of the father, for it is proved that he was present at the sale. And it further appears that Davis was not only the attorney at law for the son, but was also attorney for the father.

It remains now to examine what is Tuter's position in the controversy. If it be conceded that, having obtained the legal title, although all the purchase money was not paid, that he was, according to the legal and technical meaning of the term, a purchaser, still is he an innocent purchaser without notice of appellant's equity. By reference to the deed from the commissioner to Davis, his vendor, he would have learned that the land had been sold by a commissioner, under a judgment of the Garrard Circuit Court, and that, although Wm. H. Pilant had purchased at that sale, and received from the commissioner a certificate of his purchase, still he would have also learned that said certificate and the benefit of the purchase had been transferred to his vendor by

one legally authorized to make the transfer, *as adjudged by the court;* that a judgment appointing a commissioner to convey the legal title of the land to him had been rendered, a conveyance made in conformity thereto, and the deed recorded by judicial sanction.

Having ascertained these facts, he might well have stopped his inquiries, and for failing to go beyond the judgment of the court to examine into the power of James Pilant to make the transfer, to preclude him from the condition of an innocent purchaser, would be unreasonable. We therefore approve the judgment below, confirming the sale to Tuter, and ordering him to pay the residue of the purchase money owing by him for the land to appellant, and of the judgment against Davis for the amount which he had received from Tuter. And we also approve the judgment setting aside the conveyance to Davis, and ordering a surrender of the 24 acres and 13 poles of land retained by Davis to appellant. We also approve the principles upon which the accounts between the parties were ordered to be settled, except that Davis should be allowed so much for his improvements on the 24 acres and 13 poles as the same shall have enhanced the value of the tract at the time of the assessment, and for a refusal to allow him therefor alone the judgment is reversed, and the cause remanded, to have the value of said ameliorations ascertained, and for further proceedings consistent herewith. In all other respects the judgment is affirmed, and Davis and Pilant pay their own costs, and Tuter recover his costs of appellant Pilant.

*Turner, Owsley & Burdett, for appellant.*

*Bradley, Anderson, Davis, for appellees.*