CASE 76.—ACTION BY FRANCIS F. PALMS' ADMINISTRATORS AGAINST CALLOWAY HOWARD TO RECOVER MONEY PAID DEFENDANT FOR LEGAL SERVICES. —October 7.

## Palms' Admrs. v. Howard

Appeal from Magoffin Circuit Court.

JAMES P. ADAMS, Circuit Judge.

Judgment for defendant, plaintiffs appeal — Reversed.

1. Attorney and Client—Duties and Liabilities—Fraud of Attorney. —Courts will examine critically transactions between attorney and client, to protect the client's rights and prevent fraud by the attorney; and any disadvantage to the client from the transaction will enable him to relief, proof of actual fraud being unnecessary.

2. Same—Effect on Contracts.—An attorney owes his client the utmost good faith in all transactions between them, and equity will avoid any contract made upon any misrepresentations or concealment of material facts by the attorney, or if there is a just suspicion of artifice, or undue influence, and will so far as possible restore the parties to their original rights.

3. Same — Actions for Wrongful Acts — Burden of Proof.—One charged with taking advantage, for his own benefit, of confidence placed in him by another, must show that the confidence was not abused; and where a client claims that his attorney, for his own benefit, fraudulently concealed facts material to the client's interest, the burden is on the attorney to prove that he took no advantage of his client.

4. Same—Fraud—Right to Recover Money Wrongfully Paid.— Where a client, thinking he owned a tract of land which he

Palms' Admrs. v. Howard.

had never seen, employed an attorney to inform him of the nature of his holding, protect the land, and sell it if possible, and the attorney knowing his client had no title and that the land was held adversely, did not inform him of such facts, but led him to believe he owned a valuable piece of land, and did not attempt to sell the land as agreed, the attorney's conduct was such an abuse of confidence as to entitle the client to recover the money paid him as salary under the contract.

5. Same—Termination on Contract.—A contract between attorney and client for the protection and sale of the client's land, terminated ipso facto where the client in fact then owned no land, which the attorney knew, and no notice was necessary by the client to terminate the contract, and hence the attorney could not recover for services rendered under the contract.

D. D. SUBLETT AND KEENA LIGHTNER & OXTOBY for appellants.

### POINTS AND AUTHORITIES.

1. The court erred in refusing to transfer the case to the ordinary docket.

2. The court erred in refusing to continue the case for appellant.

3. The court erred in restricting appellants in their rebuttal evidence.

4. Also in calling term so soon after the regular term.

5. Also in not allowing the affidavit of appellants' attorney to be read as a deposition.

6. Also in giving appellee a judgment on his counterclaim.

7. Also in overruling appellants' motion for a jury to try the questions of fact.

### AUTHORITIES CITED.

Henry v. Vance, &c., 111 Ky. Law Rep., 772; Ruffner v. Ridley, 81 Ky. Law Rep., 166; Prewitt v. Trimble, 92 Ky. Law Rep., 176; 12 Bush, 726; Birch v. Nichols, &c., 26 Ky. Law Rep., 264; Story's Equity Jurisprudence, 210, 219, 192; Greenleaf on Evidence, vol. 3, sec. 253; Weeks on Attorneys, p. 532, sec. 258, 259; Weeks on Attorneys, p. 536, sec. 262, p, 531, sec. 258; Smith v. Thompson, 7 B. Mon., 308; Hill v. Phillips, 87 Ky., 169; Weeks on Attorneys, 558; Meeks v. McCall, 80 Ky., 278; Cader and Valandingham v. Wessenburgh, 95 Ky., 136; 13 Bush, 424; Chamberlin v. McCulister, &c., 6 Dana, 352; 25 Ky. Law Reporter, 1875.

Palms' Admrs. v. Howard.

A. H. BOYD, J. H. HAZELRIGG, FINLEY E. FOGG and J. J. C. BACH for appellee.

AUTHORITIES CITED.

1. A party who is himself guilty of wrong cannot obtain relief in a court of equity on account of the fraud or wrong of another in connection with the same transaction. (Cyc. of Law, vol. 16, p. 144; Newstadt v. Hall, 58 Ill., 172; Bacon v. Early, 116 Iowa, 532; Lowton v. Estes, 167 Mass., 181; Richardson v. Walton, 49 Fed. Rep., 88; Cyc. of Law, vol. 16, p. 145; Bagwell v. Johnson, 116 Ga., 464; Kassing v. Durand, 41 Ill., App., 93; Wright v Wright, 2 Litt., 8; O'Conner v. Ryan, 9 Ohio Dec., 575; Hukell v. Gorder, 189 Pa. St. 233; James v. Bird, 8 Leigh (Va.), 510; Northup v. Phillips, 99 Ill., 449; McClure v. Purcell, 3 A. K. Mar., 61; Pineville Land & Lumber Co. v. Hollingsworth, 53 S. W. (Ky.), 279; American Association v. Innis Co., 60 S. W., (Ky.), 388; Oneal v. Finwick, 64 S. W., 952).

2. Upon a partial transcript judgment must be affirmed. (Huffaker v. National Bank, 13 Bush, 64; Perciful v. Hurd's heirs, 5 J. J. Mar., 670; Dougherty v. Ringo, 7 Ky. Law Rep., 360; Terrill v. Rowland, 4 S. W. (Ky.), 825; Park v. Bolinger, 10 Ky. Law Rep., 303; Brockle- v. Brockle, 7 Ky. Law Rep., 760; Brossfield v. Burgess, 10 S. W. (Ky.), 122; Whitefield v. Hipple, 12 S. W. (Ky.), 150; Stucky v. Brown, 11 Ky. Law Rep., 404; Bright v. Buhr's Adm'r, 11 Ky. Law Rep., 579; Taders' Deposit Bank v. McGuair, 13 Ky. Law Rep., 95; Jones v. Jackson, 16 S. W., (Ky.) 458; Scott v. Means, etc., 19 S. W. (Ky.), 189; Bradford v. Bradford, 15 Ky. Law Rep., 61; Bean v. Meguiar, 29 S. W., (Ky.) 306; May v. Ewing, 29 S. W., (Ky.) 634; Courier Journal Job Printing Co. v. Columbia Fire Ins. Co., 54 S. W., (Ky.) 966; Bowman v. Moss, 77 S. W., (Ky.) 184; Whitt v. Napier, 101 S. W., (Ky.) 887; Keene v. Whitaker, 38 U. S., 459; City of Chicago v. McLean, 35 Ill. App., 273; Dow v. Northern Land & Loan Co., 51 Minn., 326; Williams v. Grant, 28 Ala.; City of Waycross v. Neal, 94 Ga., 731; Napier v. Wiseman, 3 G. Greene, (Ia.) 246; Attorney General y. Williams, 140 Mass., 329; Gwinn v. Williams, 27 Miss., 324; Hyndman v. Hogsett, 111 Pa. St., 643; International & G. N. R. Co. v. Folliard, 9 S. W., (Tex.) 259).

3. The judgment of the chancellor is entitled to as much weight as the verdict of a properly instructed jury, and where there is any evidence to sustain it, it will not be disturbed. (Owing v. Gray, 2 A. K. Mar., 520; Bagby v. Lewis, 2 T. B. Mon., 76; Rooch v. Wade, 2 T. B. Mon., 142; Garrard v. White, 14 S. W., 966; Hampton v. Meek, 12 Ky. Law Rep., 790; Swope v. Shafer, 15

.Ky. Law Rep., 42; Hall v. Roberts, 74 S. W., 200; Wilson v. Johnson's Adm'x, 96 S. W., 529; Whiteworth v. Pool, 96 S. W., 800).

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

This is the second appeal of this case. The first resulted in a reversal of the judgment of the circuit court because of error committed bv that court in prematurely submitting and deciding it. See Palms' .Adm'rs v. Howard, 102 S. W. 267, 31 Ky. Law Rep. .316. The issues presented by the pleadings are fully .stated in the former opinion, which also sets forth the provisions of the contract out of which litigation arose. It will therefore be sufficient for the purposes of the present opinion to say that the action was brought by appellants, as administrators of the estate of F. F. Palms, deceased, to recover of appellee, Calloway Howard, moneys paid him by their intestate by way of compensation for services as attorney and agent, which appellee agreed to render and claimed to have rendered, but which the petition alleges were never performed, in protecting the intestate's title to and possession of 19,000 acres of land situated in Magoffin county which the latter supposed he owned. In other words, it is the contention of appellants, as gathered from the averments of the petition, that the intestate, at the cash price of $60,000, purchased in 1891 from one Webster and received of him a deed to the 19,000 acres of land in question was covered by what was known as the May-Martin patent, issued in 1872, purporting to embrace 35,000 acres, including, however, certain excepted tracts amounting in the aggregate to 16,000 acres; that the May-Martin patent and deed conveying Palms the land were worthless and passed no title, and in point of fact the 19,000 acres Palms supposed he had purchased were at the

time of his purchase, and long prior thereto, in the
actual adverse possession of other bona fide pur-
chasers and occupying claimants, whose possession
continued after his purchase, and yet continues, and
that Palms never had possession of the land himself.
The petition further avers that Palms never saw the
land, and without knowing of the worthless character
of his title he entered into the contract with appellee,
set out in the former opinion, whereby the latter
undertook to inform him of the nature of his title and
holding, protect his possession, keep off trespassers,
see to the payment of taxes thereon, show the land to
intending purchasers, and, if possible, effect its sale.
Under this contract appellee was to receive for his
alleged services $100 per month, which salary he re-
ceived down to the year 1895, at which time by agree-
ment between himself and Palms he was thereafter
to be paid $800 per year for his services, and this
compensation he received for more than seven years.
It is the compensation paid him for and during the
time last mentioned that appellants seek to recover.
It is further alleged in the petition that appellee knew
of the fraudulent character of the May-Martin patent,
and that Palms obtained no title by his deed from
Webster to the land in question, at the time he en-
tered into the contract with Palms to render the
services expected of him, and that he concealed these
facts from Palms for the fraudulent purpose of ob-
taining of the latter the sums that were afterwards
paid him under the contract. The averments of the
petition were denied by the answer, the statute of lim-
itation pleaded, and a counterclaim set up for $1,366,
to which appellee claimed to be entitled under the
contract for services rendered the last 18½ months
of the continuance of the contract at the rate of $800

per year. By the judgment rendered in the circuit court, appellants' action was dismissed, and appellee allowed the full amount of his counterclaim. Appellants complain of that judgment; hence this appeal.

Palms did not discover the alleged fraud practiced upon him by appellee until shortly before his death, which occurred in 1904, and he was preparing to bring suit against appellee on account thereof at the time of his death. The action was later brought by appellants as his administrators, within five years of the discovery of the fraud and within ten years of the date of its perpetration. In an extended opinion in the case, supra (see Palms' Administrators v. Howard, 102 S. W. 1199, 31 Ky. Law Rep. 814), this court said: "If Palms broke his contract with Howard without cause and without notice, as therein stipulated, Howard may recover such damages as he sustained thereby; the measure of damages to be regulated as in the case of other contracts for personal services. But the contract contemplated that Palms had land for Howard to look after, and when there was no land for him to look after the contract ipso facto terminated. When there was no land to look after, there was no need of notice by Palms to terminate the contract. It was incumbent on Howard to keep his principal informed as to the facts he knew as to the land, so far as they were necessary to protect his interests, and it was also incumbent on him to exercise ordinary care and diligence to keep himself posted as to the matters within the scope of his agency."

Our examination of the entire record in this case convinces us that Palms never had title to or the possession of this land, and that these facts were unknown to him, but fully known to appellee, at the

time he entered into the contract with Palms to ren-
der the services therein provided for; that knowledge
of these facts was concealed by appellee from Palms;
and that the latter, throughout their long connection
as client and attorney, never advised Palms of the
defective character of his title, or of the fact that the
land had been in the actual adverse possession of
others for a period of more than 30 years. Indeed,
the concealment of these facts is shown by the letters
of appellee to Palms, without reference to other evi-
dence in the case. The evident purpose of this cor-
respondence was to keep alive in the breast of Palms
the belief that he had in these lands the opportunity
for future large profits. Whenever any one struck
oil, wherever coal was found or a new railroad talked
of being constructed in the vicinity of these lands,
information thereof was written by appellee to Palms,
and the opinion expressed that it would add to the
value of the lands. As late as 1902, when a nephew of
Palms visited the land with a prospective purchaser
and informed his uncle of the spurious nature of his
title and possession, appellee succeeded by corre-
spondence in counteracting in Palms' mind the effect
of his nephew's communication, and persuaded him
that the latter had misrepresented the facts as to the
land, with the intent to ultimately secure it himself
at a price less than its true value. Twice, or oftener,
appellee; when complaint was received from Palms
that he had been informed trespasses were being com-
mitted upon the land and timber destroyed, wrote him,
in substance, that such trespass did not result in seri-
ous injury to the land; intimated that they were in-
advertently committed by owners of some of the
tracts included in certain excepted surveys covered by
the May-Martin patent and in ignorance of the true

location of their lines; and explained that he had not instituted suits against the trespassers, whom he designated "exclusionists," as there might be difficulty in establishing the lines between some of the excepted tracts and these "exclusionists" and the land of Palms covered by the May-Martin patent. It seems apparent from the record that the supposed trespassing Palms complained of was not due by the so-called "exclusionists" at all, but by persons or their vendees in the actual adverse possession and claiming to be the owners of the land covered by the May-Martin patent and deed from Webster to Palms. It seems further apparent that these facts, though known to appellee, were not revealed by him to Palms, notwithstanding his undertaking to keep the latter advised of all that occurred concerning the land.

We are unable to find that appellee rendered any real or valuable service to his employer. He may have done some work in tracing and making an abstract of Palms' supposed paper title; but the report of this work was unaccompanied with any communication of the valid claims or adverse possession of the occupants of the land, which in law and in fact made Palms' title worthless. Nor did he make any effort to induce the occupying claimants to abandon their possession of the land. It is true litigation over the land would have resulted in no benefit to appellee's client; but he should have frankly advised the client of the true situation, instead of concealing it from him. Such information would doubtless have convinced the latter of the worthless character of his title, caused him to abandon his claim to the land, and enabled him to avoid the expense in taxes and salary to appellee to which he was subjected. In any event, if appellee had given such advice, and the client

had, in the face thereof, persisted in claiming the land, paying the taxes thereon, and to appellee a salary for such services as the latter rendered under the contract between them, such conduct would have relieved appellee of any responsibility as to results, and estopped Palms or his administrators to demand a return of the sums paid him. It does not appear that any material effort was made by appellee to procure a purchaser for the land, which he agreed to assist in doing and claims to have rendered some service to his client in attempting to accomplish. It is true prospective purchasers occasionally presented themselves, but it does not appear that they were taken by appellee to see the land. Whether this was because inspection of the land would have disclosed to the intending purchaser its actual possession by others, or whether, as intimated in the record, appellee was apprehensive of bodily injury to himself or others, contemplating the purchase of the land, from the persons in possession, we are unable to say; but, whatever the deterrent, it seemed sufficient to keep him off the land.

The law is emphatic in its denunciation of anything amounting to deception or fraud on the part of the attorney toward the client; and it is the policy of the courts, where complaint is made by the client, to examine critically transactions between them, that the rights of the client may be protected against any attempt of the attorney to secure any advantage to himself. In such case proof of actual fraud is not necessary in order for the client to obtain relief. The confidential relation being established, any disadvantage resulting to the client from a transaction with the attorney will be held sufficient to authorize the court to interfere in behalf of the former. The doctrine

referred to is thus discussed in Story's Equity Juris-prudence, section 310: "It is obvious that this relation (of client and attorney or solicitor) must rise to great confidence between the parties and the very strong influence over the actions and rights and interests of the client. The situation of an attorney or solicitor puts it in his power to avail himself not only of the necessities of his client and of his good nature, liber-ality, and credulity, to obtain undue advantages, bar-gains, and gratitudes. Hence the law, with a wise providence, not only watches over all the transactions of parties in this predicament, but it often interposes to declare transactions void which between other per-sons would be held unobjectionable." "A person standing in the relation of attorney must bring every-thing to the knowledge of his client that he knows pertaining to such position. Cases of undue conceal-ment sometimes arise from the relation of client and attorney. In these cases the law, in order to prevent undue advantages from the unlimited confidence which the relation naturally creates, requires that there must be the utmost degree of good faith in all trans-actions between the parties. If there is any misrep-resentation, or any concealment of a material fact, or a just suspicion of artifice or undue influence, courts of equity will interpose and pronounce the contract void, and as far as possible restore the parties to their original rights." Story, Eq. Jurisprudence, sections 192-219-311; Weeks on Attorneys, sections 258, 259, 262; Burch v. Nicholas, 80 S. W. 1132, 26 Ky. Law Rep. 264. It must not be overlooked that in such transactions as occurred between appellee and the decedent, Palms, the onus of proving that the former took no advantage of his client is upon him; for, as said in 3 Greenleaf, section 253: "The great principle

by which courts of equity are governed in cases between attorneys and clients is that he who bargains in the matter of advantage with a person placing confidence in him is bound to show that a reasonable use has been made of that confidence.'' Hill v. Phillips, 7 B. Mon. 308.

We are of opinion that appellee, in his dealings with the decedent, Palms, failed to manifest that skill, diligence, and good faith required of an attorney; that his conduct throughout was not such as constituted a fair or reasonable use of the confidence placed in him; and that his concealment of the true state of Palms' title and claim to the land described in the record induced the latter to enter into the contract between them, and caused him the unnecessary outlay and expense complained of, amounting in the aggregate to more than $10,000. This being true, it was plainly the duty of the lower court to give judgment against him and in behalf of appellants for the amount illegally received by him, from and after May 17, 1895, of the decedent, Palms, as salary; this sum being all that is claimed by appellants.

As appellants are not seriously insisting in this court upon a judgment for the taxes paid by their decedent upon the 19,000 acres of land, and the proof being somewhat indefinite as to the amount thereof, we express no opinion on that subject.

It was, however, error on the part of the circuit court to allow appellee's counterclaim, for no legal services were rendered by him under the contract with Palms for which he is entitled to be compensated. Therefore his counterclaim should have been dismissed. In other words, as said in the extended opinion on the former appeal: ''The contract contemplated that Palms had land for Howard to look after,

and when there was no land for him to look after the contract ipso facto terminated. When there was no land for Howard to look after, there was no need of notice by Palms to terminate the contract.''

For the reasons indicated, the judgment is reversed, with directions to the lower court to set it aside and enter in lieu thereof another in favor of appellant and against appellee, for the amount of salary paid the latter by the decedent, Palms, under the contract between them, from May 17, 1895, down to the date of his (the decedent's) death, with 6 per cent. interest on each payment from the date thereof, and also adjudge the dismissal of appellee's counterclaim.

O'REAR, C. J., not sitting. Petition for rehearing by appellant overruled.