## Hunt v. Picklesimer et al.

May 8, 1942.

V. R. Bentley for appellant.

Stratton & Stephenson for appellees.

OPINION OF THE COURT BY JUDGE TILFORD—Affirming.

The appellee, E. J. Picklesimer, hereinafter referred to as "the appellee," is a member of the Pike County Bar. The appellant, George Henry Hunt, is a resident

of that county, and the brother and heir at law of T. M. Hunt, deceased, whose landed estate appellant recovered as the result of litigation decided by this Court on December 3, 1929, reported under the caption, Hunt v. McCloud, in 231 Ky. page 801, 22 S. W. (2d) 285. The appellee represented appellant in this and other litigation, and by the terms of a written contract dated May 18, 1929, was to receive for his "work performed by the party of the first part in numerous cases hereinbefore and for services to be rendered in the case of George H. Hunt, plaintiff, against Lennie Hunt McCloud, in prosecuting this case to the Court of Appeals of Kentucky, * * * an amount equal to one-half of the property gained if any for his past services in this and other cases, and the services to be yet performed in the future in this case." The contract was signed by appellant and appellee and also by O. A. Stump, who was not named in the contract but whose part in the litigation is referred to in the Court's opinion in the case cited and also in the case of Commonwealth ex rel. Pike County Bar Ass'n v. Stump, 247 Ky. 589, 57 S. W. (2d) 524. Immediately thereafter, appellee, by indorsement on the back, assigned to Stump a one-half interest "in this contract" after first deducting from the proceeds $1,000 which was to be paid to Picklesimer & Steele "for past services."

On January 11, 1931, appellant signed an order directing the Master Commissioner of the Pike Circuit Court to pay to Stump $4,000 of the proceeds of a recovery of $16,000 in condemnation proceedings for a railroad right-of-way over a portion of the T. M. Hunt lands; and on February 25, 1931, signed a similar order directing the payment to Stump of an additional $2,000. Stump's connection with the condemnation proceedings is not clearly disclosed, but it would seem that under his assignment from Picklesimer he was entitled to approximately $4,000 of the proceeds as a fee. Be this as it may, it is established by the testimony of Stump and the Master Commissioner who testified for the appellant, and by the appellant's own testimony, that the consideration for appellant's signing of the above mentioned orders through which Stump obtained $6,000, was Stump's agreement to relinquish to appellant Stump's interest in the contract between appellant and Picklesimer, by which the latter was to receive an amount equal to one-half of the recovery from the T. M. Hunt estate which had been appraised at $74,000. Stump says that he executed a

writing to this effect, which, apparently, has been lost. The important point in this testimony is that it establishes beyond a doubt' that appellant before May 4, 1932, knew of appellee's assignment to Stump and that appellee was no longer entitled to one-half of the T. M. Hunt property. Notwithstanding this knowledge, appellant and his wife, on May 4, 1932, executed and delivered to appellee a deed conveying to the latter an undivided one-half interest in five parcels of land constituting the T. M. Hunt property, the first four parcels of which contained approximately six hundred acres. The fifth parcel was composed of two building lots in Pikeville improved by a residence and formerly jointly owned by T. M. Hunt and his wife. This property is known in this record as the Hoskins property, and at the time of the conveyance referred to the parties were ignorant of the widow's· joint ownership. On August 8, 1932, appellant and appellee divided the acreage between them each conveying to the other the tract which he had agreed to accept as representing one-half of the lands composing the T. M. Hunt estate.

Appellant instituted this action on February 27, 1939, to obtain the cancellation of these conveyances, alleging his contract with appellee, the latter's assignment to Stump of a one-half interest therein, the acquisition by appellant of Stump's interest, and charging that he was "* * * an elderly man with little or no education or business experience; that the defendant, E. J. Picklesimer, procured the plaintiff to execute said deeds by fraudulently and falsely representing and stating to the plaintiff that said O. A. Stump had no interest whatsoever in the T. M. Hunt estate, and that the money paid to said O. A. Stump by the plaintiff for his said interest in the said estate was a fraud perpetrated upon the plaintiff by the said O. A. Stump. That the defendant was the plaintiff's attorney and counsellor in the settlement and distribution of his brother's estates, and that he relied upon said representations of the defendant and was misled and deceived, did execute and deliver said deeds to the defendant as and for and believing that said O. A. Stump had no interest in the estate of T. M. Hunt; that the defendant falsely and fraudulently abused his trust and procured the plaintiff to convey one-half (½) of his interest in said estate when in fact he well knew, at the time, he was entitled to only one-fourth (¼) interest therein, and that he had previously assigned one-half

(½) of his contract fee in said estate to O. A. Stump; that the plaintiff has only recently learned of the extent of the estate embraced in the deeds aforesaid."

In an amended petition filed on May 25, 1939, appellant alleged appellee's subsequent acquisition, for a consideration of $40 or $50, of appellant's interest in the Hoskins property by falsely representing to him that the property was of little value. He also alleged that appellee had thereafter collected rents from the property and sold the interest which he had thus acquired at a large profit. The amendment further set forth that prior to the conveyance by appellant to appellee of a one-half interest in the T. M. Hunt property, judgments had been obtained by T. M. Hunt's creditors aggregating $4,000, and that executions on these judgments had been subsequently levied, at appellee's direction, on appellant's one-half of the acreage, which had been sold in satisfaction thereof; that appellee had promised to recover the land for appellant, but had failed to do so; and that without appellant's knowledge, appellee, through an assignment of bid and a commissioner's deed, had become part owner of that acreage, whereas, appellant had lost all of the land recovered from his brother's estate which he valued at from $40,000 to $60,000. Additional relief appropriate to the allegations of the petition was sought.

The appellee, after unsuccessfully demurring to the petition, answered, denying the fraud and misrepresentations charged, and alleging, among other things, that he was entitled to one-fourth of the $16,000 recovered for the right-of-way; that he had previously rendered other legal services to appellant worth $5,000; and that appellant had "* * *" by one way and another permitted the money in the hands of the Court to get away from him before distribution could be made and this defendant paid his portion thereof, after which it was agreed by and between the plaintiff and this defendant that they would settle all the differences of attorneys fees by conveying to defendant a portion of the lands inherited by the plaintiff, George Henry Hunt from T. M. Hunt and which was the subject matter of the litigation in the original action. In consummation of the suggestion it was agreed by the plaintiff and the defendant that the farm on Levisa Fork at and near the mouth of Island Creek composed of approximately 600 acres would be divided equally, whereupon it was further agreed that

the plaintiff, George H. Hunt would make a division line across the tract and that the defendant should take choice of the lots on either side of said division line.''

He further alleged:

''* * * at the time of the division of the property mentioned herein, Lennie Hunt who had subsequently married W. J. McCloud had not released her dower right in said property, thereupon on August 15th, 1932, this defendant obtained a deed from Lennie Hunt McCloud the surviving widow of T. M. Hunt, conveying to this defendant all her right, title and interest in said property.''

With respect to the Hoskins property appellee alleged:

''That subject to the dower rights or homestead rights of Lennie Hunt, surviving widow of T. M. Hunt the plaintiff, G. H. Hunt, inherited from T. M. Hunt an undivided one-half interest in Lots Nos. 13 and 14 on Kentucky Avenue in Pikeville, Kentucky. Says that Lennie Hunt lived in the property and was entitled to and collected the rents accruing thereon. That the plaintiff deeded this defendant one-half interest in said two lots which was included in the original agreement for fee, but as later discovered plaintiff inherited only an undivided one-half interest in said two lots and that said conveyance should have been for one-fourth of said two lots instead of one-half. Thereafter this defendant purchased said one-fourth additional from the plaintiff, George Henry Hunt and paid him the full consideration therefor, and entered into a written agreement releasing any and all right, title, interest and claim he had in said lots rectifying the deed from one-half interest theretofore made.''

In a separately numbered and final paragraph appellee pleaded the five-year Statute of Limitation in bar of appellant's claims. The appellant, by reply, traversed the material affirmative allegations of the answer but failed to plead any facts in avoidance of appellee's plea of limitation, contenting himself with a denial:

''* * * that this action is barred by the five-year statute of limitations, or that it is barred by any statute of limitations at all short of ten years from

date of perpetration of said fraudulent acts practiced upon the plaintiff by this defendant.''

We have attempted to summarize only the material allegations of the pleadings comprised within this voluminous record. Those omitted are immaterial because, conceding the facts pleaded to be true, they cannot avail appellant aught if the fraudulent acts charged by the appellant were perpetrated more than five years before the institution of his action and were discovered or discoverable by him through the exercise of ordinary diligence prior to the commencement of that period.

Appellee's excuse for procuring a conveyance of the one-half interest in the acreage composing the T. M. Hunt land when he knew that his contract, following his assignment to Stump, entitled him only to one-fourth, is, to say the least, unconvincing. His attempt to justify it because of previous valuable and unpaid-for services rendered appellant is nullified by the terms of the contract which emphasized that the interest conferred upon him was in payment of all previous services. Moreover, the assignment to Stump shows that $1,000 was to be deducted from the interest assigned in payment for services theretofore rendered by Picklesimer & Steel. Appellee knew of the outstanding judgments against the T. M. Hunt estate, and knew, or should have known, that any reasonable interpretation of his contract would require that they be satisfied out of the property before it was divided. He testified that he paid J. M. Hunt's widow $250 for her dower interest in the Hoskins property, and admits that he received approximately $750 in rents, and sold, for $800, the undivided one-half interest he had acquired from appellant for $261.33, partially paid through the cancellation of previous indebtedness. He denied that he had directed the sale of appellant's one-half of the acreage in satisfaction of the judgments against the T. M. Hunt estate, or that he had agreed with the appellant that he would recover the land for him, and, in short, he denied all of the charges of fraud and claimed that the acreage conveyed him by appellant was not worth more than $7,000. But the fact remains that he had acquired the dower interest of T. M. Hunt's widow in the acreage for $250 in addition to the $250 paid her for her dower interest in the Hoskins property, and derived a substantial profit from his acquisition of appellant's interest in the latter property, and that he is

now the owner of the T. M. Hunt landed estate with the exception of the Hoskins property and that portion of the acreage which was sold in satisfaction of the T. M. Hunt indebtedness. In addition, he was paid, according to the Master Commissioner's record, $1,150 of the proceeds of the right-of-way recovery, and possibly received certain mineral rights.

Although the law sometimes shuts its eyes to grasping shrewdness practiced by one trader upon another dealing at arm's length, unfairness such as here displayed will not be condoned when employed by a lawyer dealing with his client. Even where a conveyance by a client to his attorney is fair upon its face, it is presumptively invalid, and the burden of establishing its fairness is upon the attorney. American Jurisprudence, Volume 5, pages 287 to 289, Sections 48, 49, and 50; Corpus Juris Secundum, Vol. 7, Attorney and Client, Section 127, pages 964 to 966; Handlin, etc., v. Davis etc., 81 Ky. 34; Pilant v. Davis, 2 Ky. Op. 40; Palms' Adm'rs v. Howard, 129 Ky. 668, 112 S. W. 1110. Doubtless appellee pursued the most obvious method of securing payment for his services. Perhaps he was justified in believing that if he did not get the property someone else would, since it is apparent that appellant was not only illiterate, but infirm. But his duty as appellant's lawyer required that he protect appellant's interest as well as, and, if need be, at the expense of his own.

In response to leading questions appellant testified that he was induced to convey to appellee a one-half instead of a one-fourth, interest in the T. M. Hunt property by appellee's statements that "Mr. Stump was just working to get all the money"; "It looked like Stump was going to get it all"; that the money appellant had paid Stump was money lost; that appellant had been defrauded or cheated out of the money; and that Stump had no interest in the T. M. Hunt property.

The significance which we attach to appellant's testimony is that it fails to disclose the commission of any act by appellee within five years preceding the institution of the action which would entitle plaintiff to redress, or any such act committed prior to the commencement of that period which appellant could not have discovered by the exercise of reasonable diligence prior to its commencement. The deeds which appellant seeks to have cancelled were executed and delivered on May 4th, and

August 8th, 1932, and the written agreement by which he parted finally with whatever interest he had left in the Hoskins property was executed on February 20, 1933. The sale, for debt, of that portion of the T. M. Hunt property which appellant retained in the division had been decreed in July, 1932; and the only acts committed by the appellee within the five-year period, of which appellant complains, were appellee's sale of his interest in the Hoskins property and his acquisition of an interest in the acreage which had been sold for debt in 1932. It is true that appellant alleges that he did not discover the value of the properties until within five years prior to the institution of the suit, but no explanation is offered for his failure to discover their value at the time he acquired his title or within a reasonable time thereafter. A perusal of the record leaves no doubt that if appellant was induced to part with his property by over-reaching or fraud, the transaction was consummated and the facts known or discoverable by appellant through the exercise of reasonable diligence more than five years before he sought relief.

That portion of Kentucky Statutes, Section 2515 providing that an action for relief on the ground of fraud or mistake shall be commenced within five years next after the cause of action accrued; and Kentucky Statute, Section 2519, providing that such cause of action shall not be deemed to have accrued until the discovery of the fraud or mistake, but limiting the maximum period for the institution of the action to ten years after the making of the contract or the perpetration of the fraud, have been many times construed by this Court. In the light of these decisions it is doubtful whether appellant's petition stated a cause of action, since it disclosed that the deeds sought to be cancelled were executed more than five years previously, and failed to disclose any material fact or misrepresentation thereof inducing the execution of the deeds, which was not known by appellant at that time, or which could not have been discovered through the exercise of ordinary diligence until after the beginning of the five-year period preceding the institution of the suit. For a full discussion of this subject see County Debt Commission et al. v. Morgan et al., 279 Ky. 476, 130 S. W. (2d) 779; Mullins v. Jennings' Guardian et al., 273 Ky. 68, 115 S. W. (2d) 340, 341; House et al. v. Farmers State Bank, 269 Ky. 80, 106 S. W. (2d) 113; Jordon et al. v. Howard, 246 Ky. 142, 54 S. W. (2d) 613.

Appellants' counsel dwells at length upon the sanctity of the trust relationship which exists between attorney and client, but the trust which arises between a lawyer who wrongfully acquires his client's property by means such as are here alleged to have been employed is a resulting trust, and it has been frequently held by this Court that Kentucky Statute, Section 2543 which exempts continuing and subsisting trusts from the operation of the Statute of Limitations has no application to resulting trusts. Cox et al. v. Simmerman et al., 243 Ky. 474, 48 S. W. (2d) 1078.

The Legislature has not seen fit to prohibit an attorney from pleading the Statute of Limitations in bar of his client's demands, and we have not been able to find any authority holding that he is deprived, by reason of his relationship to the court, or otherwise, of that right.

The Chancellor gave no reason for his judgment dismissing the petition. We presume that he was unable to deny the availability or applicability of the five-year Statute of Limitations pleaded by appellee in bar of the cause of action asserted.

Judgment affirmed.